UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____

SOUTH JERSEY GAS COMPANY,          : Civil Action No. 15-1888(RMB/AMD)
                                   :
            Plaintiff,             :
                                   :
       v.                          :
                                   :
ANTERO RESOURCES APPALACHIAN       :
CORPORATION,                       :
                                   :
            Defendant.             :
_____

SOUTH JERSEY RESOURCES GROUP,      :
LLC,                               : Civil Action No. 15-1889(RMB/AMD)
                                   :
            Plaintiff,             :
                                   :        **OPINION**
       v.                          :
                                   :
ANTERO RESOURCES APPALACHIAN       :
CORPORATION,                       :
                                   :
            Defendant.             :
_____

Appearances:

Christopher Raleigh
Cozen and O'Connor
45 Broadway, 16th Floor
New York, New York 10006

Ira G. Megdal
Cozen & O'Connor
Liberty View
457 Haddonfield Road, Suite 300
Cherry Hill, New Jersey 08002-2220

    Attorneys for Plaintiffs

1

Kevin J. O'Connor
Wayne John Positan
Lum, Drasco & Positan, LLC
103 Eisenhower Parkway
Roseland, New Jersey 07068-1049

    Attorneys for Defendant

**BUMB,** United States District Judge

    Plaintiffs South Jersey Gas Co. ("SJGC") and South Jersey Resources Group, LLC ("SJRG") (collectively "South Jersey" or "Plaintiffs") brought these actions (subsequently consolidated) against Defendant Antero Resources Appalachian Corporation ("Antero" or "Defendant").  On December 23, 2015, the Court issued an Order to Show Cause why this consolidated action should not be transferred to the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1404(a) [Docket No. 24].  For the reasons set forth herein, the Court will transfer this case.

A.    <u>BACKGROUND</u>

    SJGC is a regulated natural gas utility which serves the seven southern counties of New Jersey.  <u>See</u> Complaint [Docket No. 1-2, Civil Action No. 15-1888].  SJRG is a limited liability company that provides wholesale natural gas trading, sales, storage management peaking services, transportation capacity, and natural gas portfolio management services.  <u>See</u> Complaint [Docket No. 1-2, Civil Action No. 15-1889].  Defendant,

2

incorporated under the laws of Delaware and headquartered in Denver, Colorado, specializes in oil and gas exploration and production in the Appalachian Basin.  Declaration of Sherry Anderson ("Anderson Decl.") [Docket No. 19-4] at ¶ 6.  Antero has district offices in Bridgeport, West Virginia, and Marietta, Ohio.  It has over 148,000 acres of leasehold in eastern Ohio in the Utica Shale and over 400,000 acres of leasehold in northern West Virginia and southwestern Pennsylvania in the Marcellus Shale.  Id. at ¶¶ 7-8.

Beginning in late 2009, Tim Hale, a contractor and consultant to SJRG, initiated contact with Antero.  Hale attended a natural gas trade conference in Pittsburgh, Pennsylvania, and met Steve Woodward, a Vice-President at Antero.  Affidavit of Tim Hale ("Hale Aff.") [Docket No. 22-1], at ¶ 5.  Hale was tasked by SJRG to find new business opportunities.  The two exchanged business cards, and eventually Hale telephoned Sherry Anderson, an Antero Gas Operations Manager, to discuss business opportunities.  In an email dated November 11, 2009, Hale wrote to Anderson:

> If it appeared that I was stocking [sic] your company, it was correct.  South Jersey has a strong interest in Marcellus production because of our firm Appalachian transport and storage . . . As the Business Development Officer here, I would enjoy the opportunity to visit with you concerning any possible ventures including (1) management of your transport assets, (2) marketing your gas, (3) become a working interest (minority) owner in your Marcellus drilling,

3

    (94) [sic] providing your gas gathering, or any other possible combination . . . .

Ex. 1 to Anderson Decl. After this initial contact, Hale and other SJRG employees began to negotiate the terms and parameters for a gas purchase contract with Antero. Anderson Decl. at ¶ 14.

    Hale traveled to Antero's offices in Denver, Colorado, at least twice in 2010 in furtherance of these discussions and negotiations. Id. at ¶ 15. Other negotiations were conducted over the phone and by email between Antero personnel in Colorado and SJRG employees based in Texas. Id. Antero employees never traveled to New Jersey to discuss or negotiate any contracts with South Jersey. Id. at ¶ 16.

    The natural gas produced by Antero in the Appalachia region is delivered to the "Columbia" pipeline, an interstate natural gas pipeline that collects and transports gas to New Jersey and other markets. Hale Aff. at ¶ 27. The locations at which Antero delivers its gas on the Columbia pipeline are known as "delivery points." Companies can contract with Columbia Pipeline Group "("Columbia") to deliver and take specified amounts of natural gas from the Columbia pipeline at specified delivery and receipt points. Id. SJRG had capacity (the right to transport natural gas) on the Columbia pipeline, but its receipt points were different than Antero's.

4

The collective capacity of both SJRG and Antero on the Columbia pipeline was needed to handle the amount of natural gas that Antero was willing to sell SJRG. To accomplish this, SJRG contacted Columbia to see if it would allow SJRG to change its receipt points to match Antero's delivery points. Id. at ¶ 34. Columbia ultimately permitted SJRG to modify its receipt points to match Antero's delivery points. Having now the capability to receive greater quantities of natural gas from Antero, Plaintiffs and Antero could enter into a contractual relationship.

On October 1, 2010, Antero and South Jersey entered into contracts whereby Antero agreed to supply natural gas. The terms of the contracts for SJRG and SJGC are essentially identical with the primary exception being the difference in the volume of the gas. Antero executed both contracts in Colorado. An employee of SJRG executed the SJRG contract in Texas. The SJGC contract appears to have been executed in New Jersey.

The price of natural gas under the contracts was linked to the benchmark indexed price of "Columbia Appalachia" natural gas, which is calculated and published by Platts McGraw Hill Financial ("Platts"). The parties selected Columbia Appalachia as the price to which the natural gas was benchmarked.

Beginning in October 2011, Plaintiffs began purchasing natural gas from Antero. Each month Antero delivered the gas to

5

the various delivery points in West Virginia and invoiced Plaintiffs for the natural gas.  The commercial relationship between Plaintiffs and Antero continued without incident until April 2014 when Plaintiffs allege that Antero began to invoice at improper higher prices.  Antero alleges that Plaintiffs improperly reduced the amounts it owed to Antero by using a different index, the TETCO Inside Ferc price.  Plaintiffs aver that Platts' revised methodology for calculating prices under the Columbia Appalachia Index instituted a "Market Disruption Event" which under the contracts requires the parties to select a new price.  This is the heart of the dispute between the parties.

B.     LEGAL ANALYSIS

Section 1404(a) of Title 28 of the United States Code provides that:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The parties do not dispute that this action could have been filed in the District of Colorado where Antero is headquartered.  Indeed, Antero filed its own lawsuit against SJGC and SJRG several weeks after South Jersey filed these lawsuits in New Jersey state court.

"If the proposed alternative forum is appropriate," as it is here, "it is then within the Court's discretion to transfer

6

the action." Taylor v. Global Credit & Collection Corp., Civ. No. 10-1476, 2010 WL 2521758, *1 (D.N.J. June 14, 2010)(citing Jumara v. State Farm Ins. Co., 55 F.3d 873, 883 (3d Cir. 1995)). Indeed, § 1404(a) is "intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)(internal citations omitted). "A determination that transfer to another jurisdiction is appropriate represents an 'exercise [ ] of structured discretion by trial judges appraising the practical inconveniences posed to the litigants and the court should a particular action be litigated in one forum rather than another.'" Lawrence v. Xerox Corp., 56 F. Supp. 2d 442, 450 (D.N.J. 1999)(internal citations omitted). Thus, the district court "is vested with a large discretion" to determine when transfer should be ordered "for the convenience of parties and witnesses, in the interest of justice." Solomon v. Continental Am. Life Ins. Co., 472 F.2d 1043, 1045 (3d Cir. 1973).

In deciding a transfer motion under § 1404(a), courts in the Third Circuit consider both private and public interests, as delineated in Jumara v. State Farm Insurance, 55 F.3d 873, 880 (3d Cir. 1995). The private interest factors include:

7

> 1) the plaintiff's forum preference; 2) the defendant's forum preference; 3) where the claim arose; 4) the convenience of the parties as indicated by their relative physical and financial condition; 5) the convenience of the witnesses, but only to the extent they may be unavailable for trial in one of the fora; and 6) the location of books and records (similarly limited to the extent that they could not be produced in the alternative forum).

Id. at 879. The public interest factors to be considered include:

> 1) the enforceability of the judgment; 2) practical considerations that could make the trial easy, expeditious, or inexpensive; 3) the relative administrative difficulty in the two fora resulting from court congestion; 4) the local interest in deciding local controversies at home; 5) the public policies of the fora; and 6) the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-880. The Court addresses these factors below.

1. Private Interest Factors

With regard to private interests, it is clear that Plaintiffs prefer New Jersey and Defendant prefers Colorado. Antero argues that Plaintiffs' choice of forum should be entitled to less deference because they filed an anticipatory declaratory judgment action and Antero is the true plaintiff that is owed millions of dollars in damages. Plaintiffs counter that the Court should give their choice of forum considerable deference because New Jersey is their home state and the parties agreed that New Jersey law governs.

It is true that Plaintiffs' choice of forum is "a paramount consideration" to transfer determinations, <u>Shutte v. Armco Steel Corp.</u>, 431 F.2d 22, 25 (3d Cir. 1970) and "should not be lightly disturbed." <u>Jumara</u>, at 879. Here, however, the Court gives Plaintiffs' choice of forum somewhat lesser deference because it appears that it was preemptively filed. As the Declaration of Mark Mauz ("Mauz Decl.") [Docket No. 26-1] reveals, the parties were in the midst of attempting to resolve their differences. Mauz wrote on December 23, 2014:

> At this point, I feel we need to get back together after the first of the year and see where we go from here and whether any of the other items we discussed at our meeting might lead to a resolution.

<u>Id.</u> at 10.

> Ken DePriest of SJRG responded:
>
> Mark,
> I agree we need to get back together after the first of the year and keep pushing on this, let me know if the 50,000 additional takes next summer is a target that might provide some leverage in reaching a resolution as we discussed and we can look into exactly what we can do.
>
> Regarding October–December, the direction I received from my management is to make a proposal as attached to this email that would put to bed Oct-Dec while continuing to discuss alternatives for going forward. Please take a look at the proposal and let me know your thoughts.
> Ken

<u>Id.</u>

9

Negotiations apparently were abruptly halted on February 4, 2015, when Plaintiffs filed two separate state court lawsuits.

Moreover, Plaintiffs' choice of forum warrants less deference here because most of the operative facts occurred outside New Jersey, as discussed below. See, e.g., Job Haines Home for the Aged v. Young, 936 F. Supp. 223, 227-28 (D.N.J. 1996); Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett, Ltd., 847 F. Supp. 1244, 1246 (D.N.J. 1994); AT&T v. MCI, 736 F. Supp. 1294, 1306 (D.N.J. 1990) ("Where the operative facts of a lawsuit occur outside the forum selected by the plaintiff, that choice is entitled to less deference.")(internal citations omitted).

Contrary to Plaintiffs' assertion, the claim primarily arose in Colorado or at least outside of New Jersey. Hale initially approached Antero in Colorado, after meeting an Antero representative at a Boston conference. Hale indicated that "South Jersey has a strong interest in Marcellus production because of our firm Appalachian transport and storage." Ex.1 to Anderson Decl. Thereafter, Hale traveled to Denver at least twice regarding the contracts. Negotiations were otherwise primarily conducted by telephone and e-mail. No employees of Antero, however, ever traveled to New Jersey.

Additionally, the alleged change in methodology for calculating Columbia Appalachia by Platts, the cause of the

10

parties' dispute, did not arise in New Jersey. When the price dispute arose, Hale and DePriest of South Jersey traveled to Antero's offices in Denver to attempt to renegotiate the contracts' price terms. No such meetings occurred in New Jersey. This factor – where the events and claims occurred – weighs in favor of transfer.

The convenience of the parties factor also supports a transfer to Colorado. Antero's headquarters and principal place of business are in Colorado; it does not have any offices in New Jersey. Moreover, Plaintiffs' agents traveled to Antero's office in Denver, Colorado, numerous times, initially to solicit business from Antero. Moreover, SJRG has offices in Houston, Texas, and Hale, a significant participant of the events in this matter, currently resides in Texas which is closer to Colorado. In contrast, no Antero employee ever traveled to New Jersey relating to the contracts or business relationship with Plaintiffs.

As for the convenience of the witnesses factor, there is no indication that any witnesses would be unavailable for trial. Accordingly, this factor is neutral.

Finally, it appears that all parties have maintained their documents electronically and can be easily transported. This factor is neutral.

2. <u>Public Interest Factors</u>

Plaintiffs contend that New Jersey has an interest in litigating its action in this forum because the contracts are governed by New Jersey law. Although it is true that the contracts are governed by New Jersey law, federal courts are well-equipped to apply the laws of other states and frequently do so in diversity cases. This factor is thus neutral.

The Court agrees with Defendant that this is not a case involving an entirely local interest. Plaintiffs contend that the citizens of Southern New Jersey will be impacted by the prices they may have to pay for gas. However, the prices were linked to a benchmark indexed price for gas Antero distributed to West Virginia. The parties negotiated these contract prices for gas that Antero would deliver to West Virginia both inside and outside of New Jersey. And although the gas is ultimately delivered to New Jersey, Antero's involvement ends in West Virginia. The essence of the within dispute involves gas that was/is purchased and sold in West Virginia and payment that is allegedly due to Antero in Colorado. Clearly, Colorado has an interest in regulating the conduct of its corporations. This factor weighs in favor of transfer.

As to the enforceability of any judgment against Antero, it is true that a judgment against Antero would be routine in Colorado but likely more difficult in New Jersey where Antero

has vigorously contended it is not subject to personal jurisdiction and has no assets. A judgment against South Jersey in Colorado is not problematic, however, because South Jersey has not challenged the jurisdiction of the Colorado court. This factor favors transfer.

In addition, the practical considerations factor weighs in favor of transfer. The parties have hotly contested the issue of personal jurisdiction before this Court. There is no such dispute in the Colorado matter, and that case has not been bogged down by a pending motion to dismiss and the possibility of further delay by jurisdictional discovery, as requested by Plaintiffs. Accordingly, this factor weights in favor of transfer.

Finally, the relative court congestion factor is neutral. Although the statistics presented by Antero show a greater median time to trial in the District of New Jersey than the District of Colorado, this Court is available to afford the parties their day in court as expeditiously as possible.

C.   CONCLUSION

In sum, the private and public factors, as described above, weigh in favor of transfer and, thus, on balance the Court finds it appropriate to transfer this action to the District of Colorado pursuant to 28 U.S.C. § 1404(a).

<u>s/Renée Marie Bumb</u>  
RENÉE MARIE BUMB  
United States District Judge

Dated: <u>January 21, 2016</u>